*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1178**

In the Matter of the Appeal of Rate Calculation for
Community-University Health Care Center.

**Filed April 22, 2024**
**Reversed and remanded**
**Reyes, Judge**

Minnesota Department of Human Services
File No. 37897

Douglas R. Peterson, General Counsel, Lisa L. Beane, Senior Associate General Counsel, Susan G. Kratz, Academic Health Center Counsel, University of Minnesota, Minneapolis, Minnesota; and

Kathy S. Ghiladi (pro hac vice), Feldesman, Tucker, Leifer, Fidell, LLP, Washington, D.C. (for relator Regents of the University of Minnesota Community-University Health Care Center)

Keith Ellison, Attorney General, Emily B. Anderson, Aaron Winter, Assistant Attorneys General, St. Paul, Minnesota (for respondent Commissioner of the Minnesota Department of Human Services)

        Considered and decided by Reyes, Presiding Judge; Ede, Judge; and Smith, John, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**NONPRECEDENTIAL OPINION**

**REYES**, Judge

Relator argues that the Minnesota Department of Human Services (DHS) violated state and federal Medicaid laws by excluding the costs of mental-health targeted-case-management (MH-TCM) services from relator's 2021 rate calculation. We reverse and remand with instructions for DHS to include MH-TCM services in relator's rate calculation.

## FACTS

This case concerns the methodology under which DHS reimbursed relator Community-University Health Care Center for the MH-TCM services that relator provides to its patients. In late 2020, DHS informed relator that it was departing from its longstanding practice of reimbursing relator's MH-TCM costs on a per-encounter basis and would prospectively limit reimbursement to a monthly rate. Additionally, DHS altered its formula for relator's rate calculation to exclude MH-TCM services.

Medicaid is a joint federal-state program that pays for medical services provided to eligible low-income people and persons with disabilities. 42 U.S.C. § 1396-1 (2018). States that participate in Medicaid receive federal funding to provide certain medical services. *See id.* Participating states must designate a "single State agency" to administer the state's Medicaid program according to a "State plan," which is a "comprehensive statement" of a state's Medicaid program. 42 U.S.C. § 1396a(a)(5) (2018). State plans must be approved by the Centers for Medicare and Medicaid Services and administered in

compliance with the Medicaid act and federal regulations. 42 U.S.C. § 1396-1; 42 C.F.R. § 430.10 (2022).

Medicaid-covered services are often provided by federally qualified health centers (FQHC), which are entities that receive grant funding under 42 U.S.C. § 254b (2018) to supply healthcare to underserved populations. 42 U.S.C. § 1396d(1)(2)(B) (2018). FQHCs must provide primary health services, such as internal medicine, and may provide other outpatient and ambulatory services included in the state plan. 42 U.S.C. § 1396d(a)(2)(A)(C) (2018). The state agency tasked with implementing the state plan reimburses FQHCs for the services they provide under the plan. 42 U.S.C. § 1396a(bb). The responsible state agency may calculate an FQHC's reimbursement rate under either a prospective payment system (PPS) or an alternative payment methodology (APM). *Id.* A state plan may reimburse an FQHC using an APM as long as (1) both the state and FQHC agree to the APM and (2) the APM results in a payment which is at least equal to what the FQHC would have received under a PPS system. *Id.*

In Minnesota, DHS is the agency responsible for implementing the state Medicaid plan, which is referred to as Medical Assistance. Minn. Stat. § 256B.04 (2022 & Supp. 2023). To comply with federal Medicaid requirements, DHS must reimburse FQHCs for the Medicaid-covered services they provide to beneficiaries using either a PPS or an APM. 42 U.S.C. § 1396a(bb); Minn. Stat. § 256B.0625, subd. 30(l) (Supp. 2023).

Relator is a Minneapolis-based FQHC that offers MH-TCM services, which assist individuals who have a mental illness with integrating into society and accessing other health and patient-related support services. Relator has a contract with Hennepin County

to provide MH-TCM services on the county's behalf. The contract between relator and the county requires MH-TCM services to be billed and reimbursed at a per-encounter rate.

In 2021, DHS instituted a new APM entitled "APM-IV" under which FQHCs are paid on a per-encounter basis. The Centers for Medicare and Medicaid Services approved the APM-IV rate with an effective date of January 1, 2021. APM-IV's calculation methodology excludes MH-TCM services as "nonallowable costs" under Minn. Stat. § 256B.0625, subd. 30(l)(3) (hereinafter subdivision 30(l)(3)).

In April 2021, DHS informed Hennepin County that it would no longer include MH-TCM expenses in relator's per-encounter rate and would only reimburse relator's MH-TCM costs on a monthly basis. Three months later, DHS sent relator its final rate calculation for 2021, in which it excluded MH-TCM services as a "nonallowable cost" under subdivision 30(l)(3). DHS calculated relator's reimbursement rate under both the APM-IV and PPS methodologies. However, DHS's PPS rate calculation included MH-TCM while its APM-IV rate calculation excluded MH-TCM services. Despite this, DHS's calculation of the APM-IV reimbursement rate still exceeded the PPS rate. DHS sent relator both rates, and relator elected to be reimbursed under the APM-IV rate. Relator appealed DHS's APM-IV rate calculation, and DHS initiated a contested proceeding before an administrative-law judge (ALJ).

In September 2022, the ALJ issued its order on the parties' cross motions for summary disposition, recommending that relator be granted summary disposition and that DHS's APM-IV rate calculation be rescinded and recalculated to include MH-TCM services. The ALJ determined that DHS exceeded its statutory authority under Minn. Stat.

4

§ 256B.0625, subd. 30(l)(4), by identifying MH-TCM services as a category of nonallowable costs in a manner not authorized by the legislature. DHS timely filed exceptions to the ALJ's recommendation, placing the matter before respondent Commissioner of the Minnesota Department of Human Services (the commissioner).

The commissioner declined to follow the ALJ's recommendation and issued a final order granting summary disposition to DHS in January 2023. The commissioner determined that DHS acted within its statutory authority when it listed MH-TCM services as nonallowable costs because Minn. Stat. § 256B.0625, subd. 30(l), enumerates a non-exhaustive list of nonallowable costs, and a different subdivision in the statute provides that "Medical [A]ssistance and MinnesotaCare payment for mental health case management shall be made on a monthly basis." Minn. Stat. § 256B.0625, subd. 20(c) (2022). The commissioner subsequently denied relator's request for reconsideration.

Relator petitioned for certiorari review.

**DECISION**

Relator argues that (1) DHS exceeded its statutory authority under both state and federal Medicaid laws by excluding MH-TCM services from relator's APM-IV rate calculation and (2) DHS's decision to depart from its longstanding practice of reimbursing MH-TCM services on a per-encounter rate was arbitrary and capricious. We agree that DHS's APM-IV rate calculation violates Minn. Stat. § 256B.0625, subd. 30(l), and we therefore do not reach relator's remaining arguments.

The Minnesota Administrative Procedure Act governs our review of the commissioner's final order. Minn. Stat. §§ 14.001-.69 (2022). When reviewing an

5

agency's final decision, we may either affirm or remand the case for further proceedings. Minn. Stat. § 14.69. We may also reverse or modify the commissioner's final order if, among other things, we conclude that relator's substantial rights were prejudiced because the commissioner's order is made "in excess of the statutory authority or jurisdiction of the agency" or is "arbitrary or capricious." *Id.*

Relator asserts that its rate calculation under APM-IV violates Minnesota law for reimbursing FQHCs because (1) MH-TCM services are allowable costs under federal Medicaid regulations, and DHS is required to reimburse relator for its "allowable costs" and (2) MH-TCM services are not included in the statutorily enumerated nonallowable costs. *See* Minn. Stat. § 256B.0625, subd. 30(l)(3). Relator's argument is persuasive.

Subdivision 30(l)(3) provides that "the commissioner shall reimburse FQHCs and rural health clinics, in accordance with current applicable Medicare cost principles, their allowable costs, including *direct patient care costs and patient related support services*." *Id.* (Emphasis added). The applicable Medicare principles for determining whether costs are "allowable" are contained in 42 C.F.R. § 405.2468(b) (2022). That regulation provides that certain FQHC costs "are included in allowable costs to the extent they are covered and reasonable." *Id.* These costs include "[c]ompensation for the services of a *physician . . . clinical psychologist . . . [or] mental health counselor.*" Other Changes to Part B Payment and Coverage Policies, 88 Fed. Reg. 78818, 79525 (Nov. 16, 2023) (to be codified at 42 C.F.R. pt. 405) (emphasis added). Moreover, the regulation also covers "[c]osts of services and supplies incident to the services of a . . . clinical psychologist . . . or mental health counselor." *Id.*

6

MH-TCM services utilize "case managers" who provide patients with a functional assessment,[1] a community support plan, and resources connecting the patient to mental health and other services while also coordinating and monitoring the delivery of those services. Because Minnesota requires case managers to be mental-health practitioners, Minn. Stat. § 245.462, subd. 4(3) (2022), MH-TCM services fall under the umbrella of "services of a . . . clinical psychologist [or] mental health counselor" as well as costs incident to such services. Other Changes to Part B Payment and Coverage Policies, 88 Fed. Reg. at 79525. MH-TCM services are therefore an allowable cost under the current applicable Medicare principles, meaning that the commissioner is presumptively required to reimburse relator for its MH-TCM costs. Minn. Stat. § 256B.0625, subd. 30(l)(3).

However, Minnesota's Medicaid statute defines specific categories of costs as "nonallowable" for FQHC reimbursements. Subdivision 30(l)(3) provides that nonallowable costs, "include, but are not limited to:

> (i) general social services and administrative costs;
> (ii) retail pharmacy;
> (iii) patient incentives, food, housing assistance, and utility assistance;
> (iv) external lab and x-ray;
> (v) navigation services;
> (vi) health care taxes;
> (vii) advertising, public relations, and marketing;
> (viii) office entertainment costs, food, alcohol, and gifts;

---

[1] Functional assessments evaluate an individual's health-care coverage, access to health care, participation in recommended physical- and mental-health-care treatment, and wellness issues important to the individual.

(ix)  contributions and donations;

(x)  bad debts or losses on awards or contracts;

(xi)  fines, penalties, damages, or other settlements;

(xii)  fundraising, investment management, and associated administrative costs;

(xiii)  research and associated administrative costs;

(xiv)  nonpaid workers;

(xv)  lobbying;

(xvi)  scholarships and student aid; and

(xvii)  nonmedical assistance covered services."

DHS argues that, because subdivision 30(l)(3) provides for a non-exhaustive list of nonallowable costs, it was permitted to exclude MH-TCM costs from relator's rate calculation.  We disagree.

Whether MH-TCM costs may be excluded from a rate calculation under subdivision 30(l)(3) presents a question of statutory interpretation that we review de novo.  *Curtis v. Klausler*, 802 N.W.2d 790, 793 (Minn. App. 2011), *rev. denied* (Minn. Oct. 18, 2011).  Minnesota statutes are commonly written to indicate that a non-exhaustive list of items covered by the provision may be supplemented by items of the same kind or class as those specifically identified.  *State v. Khalil*, 956 N.W.2d 627, 638-39 (Minn. 2021).

Here, the statute provides an extensive list of 17 nonallowable costs which all share a common feature: they are ancillary costs that are tangential to patient treatment and instead address the logistical and operational costs FQHCs incur in maintaining their business functions.  It is logical that the legislature would seek to avoid allocating public funds to cover a private entity's operational costs, especially when those costs are

8

tangential to providing treatment to Medicaid beneficiaries. The enumerated nonallowable costs therefore harmonize with the statutory language stating that the commissioner "shall" reimburse FQHCs for "direct patient care costs and patient-related support services." Minn. Stat. § 256B.0625, subd. 30(l)(3).

Conversely, MH-TCM services provide "direct patient care" and "patient-related support," and are therefore categorically different than the enumerated nonallowable costs.[2] MH-TCM services allow Medicaid beneficiaries to receive mental health and other necessary treatment directly from licensed health-care practitioners and provide the logistical framework and oversight to ensure that beneficiaries continue to have access to those services. The commissioner is therefore required to reimburse the costs relator incurs for providing "direct patient care and patient-related support" through its MH-TCM services. *Id.*; *see* Minn. Stat. § 645.44, subds. 15, 17 (2022) (defining "shall" and "may"); *City of Circle Pines v. County of Anoka*, 977 N.W.2d 816, 823 (Minn. 2022) (explaining the impact of "shall" and "may" in statutory interpretation). Because MH-TCM services are allowable costs under general Medicare principles and cannot be construed to be of the same kind of cost as the 17 nonallowable costs in subdivision 30(l)(3), DHS exceeded its statutory authority by excluding MH-TCM services from relator's rate calculation. *See*

---

[2] The only statutorily nonallowable costs that could ostensibly encompass MH-TCM services are "general social services" and "nonmedical assistance covered services." However, even those nonallowable costs are readily distinguishable from MH-TCM services because they contemplate nonessential benefits that may be provided in addition to patient care or treatment. Conversely, MH-TCM services allow patients to receive clinically supervised treatment from a licensed mental-health practitioner. Minn. Stat. §§ 245.462, subd. 4(3); 245I.04, subd. 2 (2022).

*State v. Sanschagrin*, 952 N.W.2d 620, 628 (Minn. 2020) (noting that, because appellant's action was not in category of requests contemplated by Minnesota statute, the statutory approval provision did not apply).

Because they allow patients to receive the mental-health treatment necessary to maintain their health and fully participate in society, MH-TCM services are essential services. Allowing DHS to exclude MH-TCM services from an FQHC's rate calculation would therefore frustrate Medicaid's purpose of providing essential health services to underserved populations. *See* 42 U.S.C. § 1396-1. DHS exceeded its statutory authority by excluding the costs of MH-TCM services from relator's rate calculation. We therefore reverse the commissioner's order granting summary disposition to DHS and remand the case for DHS to recalculate relator's 2021 APM-IV rate calculation with MH-TCM services included as an allowable cost.

**Reversed and remanded.**